UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARYISE L. EARL,

                  Plaintiff,

v.                                                    Case No. 23-cv-1679-pp

A. BRIGGS,

                  Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Daryise L. Earl, who is incarcerated at Kettle Moraine Correctional Institution (KMCI) and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant retaliated against him by deliberately withholding his medication. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On December 19, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $4.60. Dkt. No. 5. The court received that fee on January 4, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as the sole defendant Kettle Moraine Correctional Officer A. Briggs. Dkt. No. 1 at ¶3. The plaintiff alleges that the defendant applied "a bias[ed] application to KMCI's policies and procedures to either prevent, or frustrate, [the plaintiff's] ability to utilize the institution's law library, the collect calling system, and prisoners' visitations." Id. at ¶5. The plaintiff says he "made complaints, verbally and written," about the defendant's behavior. Id. at ¶6.

The plaintiff alleges that at 10:50 a.m. on May 21, 2023, he and the defendant were passing each other as the plaintiff walked toward his assigned room. Id. at ¶7. He says the defendant did not walk around him but instead "tried to squeeze through the small space between him and a table." Id. at ¶8. He says the defendant "made physical contact with" his right side while he was focused on a television off to his left side. Id. at ¶¶9–10. The plaintiff says he believed the defendant was trying "to provoke him to make an ignorant outburst," so he "asked [the defendant] what was her problem." Id. at ¶11. The defendant told the plaintiff to "stay out of her way or there would be a problem." Id. at ¶12. KMCI Captain Howe (not a defendant) entered the housing unit a short time later. Id. at ¶13. The plaintiff tried to explain the incident to Howe, who told the plaintiff "that he would review the institution's camera system and discuss this matter with [the defendant]." Id. at ¶14.

The plaintiff alleges that at around 4:50 p.m. the same day, the defendant gave him a carbon copy receipt of a medical supply refill request that the plaintiff had submitted to obtain a refill of his sinus medication, Loratadine. Id. at ¶15. The plaintiff says he had submitted the form to medical staff the previous day, and staff had returned the form to him to advise him that his medication had been issued. Id. at ¶¶16–17. The plaintiff says that medical staff sends requested medication to the incarcerated person's housing unit "in a locked-bag." Id. at ¶18. A unit officer digitally scans the incarcerated person's identification card and the bar code on the medication to record the date and time the officer distributed the medication. Id. at ¶¶19–21. The plaintiff says he

4

Case 2:23-cv-01679-PP   Filed 03/12/24   Page 4 of 12   Document 8

needs his sinus medication to prevent inflammation of his nasal cavity, which can cause "continuous violent sneezes," nose bleeds, "a seemingly never ending runny nose" and eye irritation and discoloration. Id. at ¶¶22–24. The plaintiff says he is permitted to have the sinus medication in his cell or "on person." Id. at ¶¶25–27. He submitted the May 20, 2023 request because he "had forgotten to timely request a refill," and "his supply of this medication had been depleted." Id. at ¶28. He says he was suffering from nasal inflammation, which caused him "painful sneezes that were to taking [*sic*] a toll on him physically." Id. at ¶29.

      The plaintiff alleges that at around 6:15 p.m. on May 21,2023, he asked the defendant for his Loratadine because he had not yet received it. Id. at ¶30. The defendant allegedly responded that medical staff had not sent the plaintiff any Loratadine that day. Id. at ¶31. The plaintiff says that before he asked the defendant, "several prisoners had already informed [him] to go get his medication that they had seen with his name on, sitting on the guard's counter." Id. at ¶33. The plaintiff says he also had seen the Loratadine, which is in "an easy to identify blue box." Id. at ¶¶32, 34. The plaintiff says the defendant maintained that medical staff had not sent him any medication. Id. at ¶35. Over the next day, the plaintiff "repeatedly asked [the defendant] for the Loratadine." Id. at ¶36. He says the defendant "maintained her claim that the medical staff never sent the" medication. Id. at ¶37. He says she "even joked that she had not taken her Adderall, so [she] and [the plaintiff] both would not be medicated." Id. at ¶38.

5
Case 2:23-cv-01679-PP   Filed 03/12/24   Page 5 of 12   Document 8

The plaintiff alleges that on May 23, 2023, he wrote to medical staff "to notify them of the defendant's refusal to distribute the Loratadine that they had sent on May 21, 2023." Id. at ¶39. Medical staff issued another box of Loratadine, which a different correctional officer gave to him. Id. at ¶40. The next day, the plaintiff informed a sergeant (not a defendant) about the defendant's "refusal to dispense the Loratadine to him." Id. at ¶41. The sergeant searched the officers' station on the plaintiff's housing unit "and within seconds he was able to locate the Loratadine that the defendant had repeatedly alleged had not been sent by the medical staff." Id. at ¶42. The plaintiff says that the label on this box of Loratadine "stated that it had been dispensed on '5/21/23,'" and the label on the second box of Loratadine, which the plaintiff received on May 23, 2023, "stated that it had been dispensed on '5/23/23.'" Id. at ¶¶45–46. The plaintiff alleges that his "sinus cavity was painfully inflamed . . . throughout the duration of time [the defendant] refused to dispense his prescription of Loratadine." Id. at ¶47. He reiterates that he "informed [the defendant] of his medical predicament subsequent to each time she falsely alleged that the medical staff had not sent the Loratadine." Id. at ¶48.

The plaintiff claims that the defendant retaliated against him for filing a complaint about her conduct (bumping into him in the hallway) to Captain Howe on May 21, 2023. Id. at 6. He says her actions "were intended to teach [him] a lesson about the restrictions she could impose to prohibit distribution of the medication he seriously needed." Id. He asserts that the defendant

withheld his medication because of "the complaints he had made in regards to her unprofessional conduct." Id. The plaintiff also claims that by withholding his medication despite knowing he needed it, the defendant was deliberately indifferent to his serious medical condition. Id. at 7–8. The plaintiff seeks punitive and compensatory damages against the defendant. Id. at 9.

  C. Analysis

The plaintiff raises two claims. First, he asserts that the defendant withheld his medication as retaliation for the complaint he filed against her on May 21, 2023. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The plaintiff alleges that his protected activity is the complaint he made to Captain Howe about the defendant bumping into him on May 21, 2023. Filing a previous complaint generally is protected activity. See Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020). The plaintiff says his complaint about the defendant motivated her to withhold his medication. This suggests that the defendant both knew about his protected conduct (filing the complaint) and acted because of it, which satisfies this element of a First Amendment claim. See Healy v. City of Chicago, 450 F.3d 732, 740–41 (7th Cir. 2006). The

plaintiff says the defendant's conduct "'would deter a person of ordinary firmness from exercising his First Amendment rights.'" Dkt. No. 1 at 6 (quoting Bridges, 557 F.3d at 552). He says that by refusing the plaintiff his medication, the defendant was following through on "her threat that 'there would be a problem' if [the plaintiff] did not 'stay out of her way.'" Id.

The court concludes that the plaintiff's allegations about the defendant withholding his medication are sufficient to state a First Amendment claim. He alleges that the defendant intentionally and knowingly withheld his medication because of the complaint he had filed against her earlier the same day. He alleges that the defendant withheld the medication knowing it would cause the plaintiff sinus problems and did so to "teach [him] a lesson." Id. The court must accept these allegations as true for the purpose of screening the complaint. The plaintiff may proceed on this claim against the defendant.

Second, the plaintiff claims that by withholding his sinus medication, the defendant was deliberately indifferent to the sinus issues he would suffer without the medication. The court analyzes these allegations under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendant was "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate

8
Case 2:23-cv-01679-PP   Filed 03/12/24   Page 8 of 12   Document 8

indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff asserts that his sinus condition is objectively serious because KMCI medical staff "customarily prescribe [him] Loratadine as a means to minimize the painful inflammation within his sinus cavity." Dkt. No. 1 at 7 (citing Lewis v. McLean, 864 F.3d 556, 15 [*sic*] (7th Cir. 2017)). The case he cites says, "A medical need is sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" Lewis, 864 F.3d at 563 (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). The complaint does not allege that a physician has *mandated* treatment for the plaintiff's sinus inflammation. It alleges that medical staff have prescribed the plaintiff Loratadine for his symptoms, which include painful sneezes, nose bleeds, a persistently runny nose and eye irritation. The Seventh Circuit has explained that "a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns." Roe v. Elyea, 631 F.3d 843, 861 (7th Cir. 2011). For screening purposes, the court finds that the plaintiff's allegations are sufficient to satisfy the objective component of his Eighth Amendment claim.

The complaint's allegations also satisfy the subjective component. The plaintiff says that the defendant witnessed the plaintiff's symptoms firsthand, and that he repeatedly asked her for his medication. He alleges that the defendant knew he needed the medication and that she had no legitimate reason not to give it to him. The plaintiff says that the defendant intentionally withheld his medication out of deliberate indifference to his sinus inflammation and the resulting symptoms. This is enough to state a claim that the defendant was deliberately indifferent to the plaintiff's sinus inflammation. See Gil v. Reed, 381 F.3d 649, 661–62 (7th Cir. 2004) (reversing summary judgment for prison official whose "angry and unexplained refusal to give [incarcerated person] his prescribed medication" constituted "a deliberate and potentially malicious act" sufficient to survive dismissal).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant A. Briggs at Kettle Moraine Correctional Institution. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$345.40** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Kettle Moraine Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**