DARYISE L. EARL,

          Plaintiff,

v.

          Case No. 23-cv-1679-pp

ESTATE OF ALLISON BRIGGS,

          Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 52), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 61) AND SETTING CASE DEADLINES**

On March 12, 2024, the court screened plaintiff Daryise L. Earl's complaint under 42 U.S.C. §1983 and allowed him to proceed on First and Eighth Amendment claims against Kettle Moraine Correctional Institution Officer Allison Briggs. Dkt. No. 8. On May 8, 2024, defense counsel filed an answer to the complaint, dkt. no. 12, and a document titled "Suggestion of Death of Defendant Allison Briggs," in which counsel stated that Briggs had died on April 8, 2024, dkt. no. 11. On March 12, 2025, the court granted the plaintiff's motion to substitute Attorney David A. Van de Water as the representative for the deceased defendant's estate. Dkt. No. 32. This order denies the defendant's motion for partial summary judgment on exhaustion grounds, dkt. no. 52, denies the plaintiff's motion for sanctions, dkt. no. 61, and sets deadlines for the parties to complete discovery and file motions for summary judgment on the merits.

1

**I. Defendant's Motion for Partial Summary Judgment on Exhaustion Grounds (Dkt. No. 52)**

A. <u>Facts</u>

When it screened the complaint, the court allowed the plaintiff to proceed on a claim that Briggs had withheld the plaintiff's sinus medication as retaliation for the plaintiff's complaint to Captain Howe about Briggs's conduct (bumping into him in the hallway) on May 21, 2023. Dkt. No. 8 at 4, 7-8. The court also allowed the plaintiff to proceed on an Eighth Amendment claim that in withholding his sinus medication on May 21 and 22, 2023, Briggs was deliberately indifferent to the sinus issues the plaintiff suffered without the medication. <u>Id.</u> at 8-10.

The plaintiff was incarcerated at Kettle Moraine Correctional Institution during the events described in the complaint. Dkt. No. 54 at ¶1. Briggs worked at Kettle Moraine as a correctional officer during that time. <u>Id.</u> at ¶2. The plaintiff submitted three inmate complaints that are potentially related to the claims in this lawsuit: KMCI-2023-1449, KMCI-2023-8304, and KMCI-2023-8305. <u>Id.</u> at ¶7.

1. *Complaint KMCI-2023-1449*

On January 30, 2023, the institution complaint examiner's (ICE) office received complaint KMCI-2023-1449. <u>Id.</u> at ¶9. In that complaint, the plaintiff identified the incident date as January 29, 2023, and the issue as: "Unit-9's first shift officer creates bias [sic] unwritten policies to selectively target prisoners who seek to use the phone." <u>Id.</u> at ¶10. The plaintiff alleged that Briggs antagonized certain incarcerated individuals who used the phone. <u>Id.</u> at

2

Case 2:23-cv-01679-PP    Filed 07/16/26    Page 2 of 19    Document 91

¶11. The receiving authority adopted the ICE's recommendation to dismiss the complaint. Id. at ¶¶12-13. The plaintiff did not appeal that decision. Id. at ¶14.

### 2. *Complaint KMCI-2023-8304*

On June 5, 2023, the ICE's office received complaint KMCI-2023-8304. Id. at ¶15. The plaintiff identified the incident dates as May 21 to May 22, 2023, and the issue as: "The [Correctional Officer] withheld my medication for two days without a reasonable basis for doing so! I want to stop being punished because she hate[s] me. DE." Id. at ¶16. The plaintiff provided the following details:

> I forgot to timely request a refill of my sinus medication before I ran out, so on or about 5/21/23 submitted a refill request. On 5/21/23 when I came out to get my dinner tray [Correctional Officer] Bridges [sic] gave me the carbon copy from my refill request that stated the meds had been issued. I s[aw] the blue box these meds come in sitting on the officer's counter, plus several other prisoners informed me that they s[aw] my name on the pill box; however, when I asked Bridges for the meds she alleges that HSU did not send anything for me. Because my sinus had flared up real bad I repeatedly asked for these meds on 5/21/23 and 5/22/23, which Bridges still alleged HSU had not sent the meds. On 5/22/23 I wrote HSU to report how Bridges was refusing to give me meds that I really needed. On 5/23/23 another prescription of Loratadine. On 5/24/23 I informed Jozwiak about this incident, and after a brief search (within seconds) he found the meds Bridges refused to give me. The tag on the meds stated that they had been dispensed on 5/21/23 (bar code #48821002). I am attaching with this ICE the responses I have received in response to the written complaints I filed! Complaint written to ICE on 5/24/23; complaint written to HSU on 5/23/23; complaint written to Jon Noble on 5/28/23.

Id. at ¶17.

On June 9, 2023, the ICE recommended that complaint KMCI-2023-8304 be dismissed and stated in part:

> This examiner contacted HSU Burton regarding the medication issue and she indicated: "PIOC Earl did submit a DOC-3035C for Loratadine on 5/20/2023 and it was issued to the unit on 5/21/2023. PIOC Earl did send letter to me, HSM Burton, to discuss this complaint against CO Briggs. I deferred to CPS Sabish as it was a complaint against security, not HSU."
>
> This examiner contacted CPS Sabish regarding this incident with CO Briggs and he indicated: "Talking to the officer, she gave him his HSU response back and told him at least twice that he had medication at the desk and he never came and got them and put them in the medication drawer. The next day Earl asked Sgt. Jozwiak and he got them out of the drawer for him." The issue of this complaint is reduced to one person's word against the other. Lacking any other credible evidence, the ICE is placed in the position of having to speculate and that would be improper. Recommendation is made for dismissal with copies of the complaint decision to Unit Supervisor and Security Director for informational purposes and follow-up as deemed necessary.

Id. at ¶18. The reviewing authority adopted the ICE's recommendation and dismissed complaint KMCI-2023-8304. Id. at ¶19.

The plaintiff appealed the dismissal. Id. at ¶¶21-22. The reviewing corrections complaint examiner (CCE) recommended that the appeal be dismissed, and the Office of the Secretary adopted that recommendation and dismissed the appeal. Id. at ¶¶22-23.

### 3. *Complaint KMCI-2023-8305*

On June 5, 2023, the ICE's Office received complaint KMCI-2023-8305. Id. at ¶24. In that complaint, the plaintiff identified the incident date as May 21, 2023, and the issue as: "I was walking toward the short hall when the C.O. intentionally walked into me. I would request that the childish games stop." Id. at ¶25. The plaintiff provided the following details:

> On 5/21/23 I was walking to the cell that is assigned to me (short hall) while C.O. Bridges [sic] was walking from the short hall towards

officer's station. The course I took left an ample amount of space for a person my size (230 lbs.) to walk past me without touching me; however, C.O. Bridges still chose to intentionally walk into me. When I asked her what her problem was with me, C.O. Bridges stated "I should stay out of her way or there would be a problem." Within minutes of this incident happening Capt. Howe walked into the unit at which [sic] I explained what had just occurred, and he assured me that he would review the camera footage. If I intentionally walk into a C.O. I would be instantly sent to segregation, and there is a strong possibility that I could face criminal charges for assaulting staff. So I don't want to be assaulted. DE.

Id. at ¶26.

The ICE recommended that the complaint be dismissed and stated in part:

This examiner contacted CPS Sabish who reviewed the video footage of the incident and reports: "I watched the video and officer Briggs walks out of the short hall to the front of the officer's bubble. Inmate Earl is walking towards officer Briggs and they may have touched arms but it was very minimal if any. Inmate Earl made zero attempt to avoid contact and could have move[d] to the left and there would not have been contact made as there was a cart on Officer Brigg's left side for her not to move over much."

The issue of this complaint is reduced to one person's word against the documented video footage. Lacking any other credible evidence, the ICE is placed in the position of having to speculate and that would be improper. In reviewing this complaint, the ICE finds no information that would support any staff misconduct or work rule violations on the part of staff. The inmate is pointing out actions by an officer that he does not agree with or like. There may be, at times, some staff member with whom the inmate has a personality conflict or a dislike for the way the staff member asserts her authority—but this does not warrant an investigation by the ICE unless staff misconduct is alleged and such is not the case in this circumstance.

Examiner recommends complaint be dismissed. Unit Supervisors have been copied for informational purposes only.

Id. at ¶27. The Reviewing Authority adopted the ICE's recommendation and dismissed the inmate complaint. Id. at ¶28.

The plaintiff appealed the reviewing authority's dismissal. Id. at ¶¶29-30. The CCE recommended that the plaintiff's appeal be dismissed. Id. at ¶31. The Office of the Secretary adopted that recommendation and dismissed the plaintiff's appeal. Id. at ¶32.

B.      Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### C. Discussion

The defendant contends that the plaintiff failed to exhaust administrative remedies for his First Amendment retaliation claim—his claim that Briggs refused to dispense the plaintiff's sinus medication in retaliation for the plaintiff complaining about Briggs bumping into him in the hallway. Dkt. No. 53 at 10, 12. The defendant states that of the inmate complaints the plaintiff submitted that potentially are related to his retaliation claim, he fully exhausted complaints KMCI-2023-8304 and KMCI-2023-8305 but that those complaints did not give prison officials notice of the plaintiff's retaliation claim against Briggs. Id. at 12-13.

The plaintiff acknowledges that he did not raise the issue of retaliation in these inmate complaints, but he asserts that Cory Sabish, Kettle Moraine's corrections program supervisor, threatened that if the plaintiff submitted an inmate complaint claiming that that Briggs had retaliated against him, "the consequences would be severe—an extensive stay in the segregation unit[.]" Dkt. No. 87 at 3; see also Pl.'s Decl. at ¶49. The plaintiff asserts that Sabish's threat was a legitimate deterrent that caused him to refrain from directly describing Briggs's retaliatory conduct in his inmate complaint. Dkt. No. 87 at 5. The plaintiff states that he believed that Sabish would punish him if he wrote an inmate complaint directly saying that Briggs's conduct was retaliatory, and he points to the conduct report that Sabish wrote him "based

7

on the asserted claims [the plaintiff] made within his inmate complaint about the event that had initiated Briggs' retaliatory conduct." Id. at 7-8 (quoting Sabish Decl., Dkt. No. 75, at 5 ¶22).

The defendant replies by reiterating his contention that the plaintiff failed to exhaust administrative remedies as to his retaliation claim because he never identified retaliation as an issue in any of the relevant inmate complaints he submitted. Dkt. No. 90 at 1. The defendant states that the plaintiff could have identified a protected conduct in one of the two inmate complaints he submitted (KMCI-2023-8304 or KMCI-2023-8305). Id.

The Prison Litigation Reform Act (PLRA) provides that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The

8

Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections (DOC) has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. Id. The ICE shall accept, return or reject a complaint. Wis. Admin. Code §DOC 310.10(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may

recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the CCE. Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The secretary shall affirm or dismiss the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

It is undisputed that the plaintiff did not fully exhaust complaint KMCI-2023-1449. It also is undisputed that the two inmate complaints the plaintiff exhausted (KMCI-2023-8304, KMCI-2023-8305) did not raise the issue that Briggs withheld the plaintiff's medication in retaliation for the plaintiff complaining to Captain Howe on May 21, 2023 about Briggs walking into him. Complaint KMCI-2023-8304 raised the issue that Briggs withheld the plaintiff's medication on May 21 and 22, 2023 without a reasonable basis. Complaint KMCI-2023-8305 raised the issue the Briggs walked into the plaintiff on May 21, 2023. The plaintiff asserts that Sabish threatened to send him to segregation if he raised the issue in an inmate complaint that Briggs retaliated against him.

An incarcerated individual need only exhaust "available" administrative remedies. Ebmeyer v. Brock, 11 F.4th 537, 542 (7th Cir. 2021) (citing Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016)). "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct'

10

prevents prisoners from pursuing administrative remedies." Id. (citing Hernandez, 814 F.3d at 842); see also Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). For example, administrative remedies are unavailable when an officer tells an incarcerated individual that he cannot file a grievance when in fact he can do so. Ebmeyer, 11 F.4th 537 at 542-43 (citing Thomas v. Reese, 787 F.3d 845, 847-48 (7th Cir. 2015)). Remedies also are unavailable when a plaintiff presents evidence that prison personnel denied him grievance forms, threatened him and solicited other incarcerated persons to attack him in retaliation for filing grievances. Id. at 543 (citing Kaba v. Stepp, 458 F.3d 678, 680, 686 (7th Cir. 2006)); see also Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison personnel refused plaintiff individual access to required grievance forms).

When an incarcerated individual claims that the grievance process is unavailable because he fears reprisal, he must demonstrate that a person of "ordinary firmness" would have been deterred from filing a grievance in the circumstances alleged. Ebmeyer, 11 F.4th at 543 (citing Schultz v. Pugh, 728 F.3d 619, 621 (7th Cir. 2013)); see also Kaba, 458 F.3d at 684-85. This is an objective standard. Ebmeyer, 111 F.4th at 543. The plaintiff avers that on May 23, 2023, he started drafting an inmate complaint based on Briggs's alleged retaliatory conduct and that on May 25, 2023, he told Sabish of his "almost completed inmate complaint, and the lawsuit [he] intended to file, as a result of Briggs['s] retaliatory conduct." Dkt. No. 89 at ¶¶46-47. The plaintiff avers that Sabish told him to "expect a long stay in the segregation unit if [Sabish] heard

11

that [the plaintiff] had made any claims that Briggs retaliated against [him] because of the complaints [he] had been making." Id. at ¶49. He avers that Sabish's reasoning was that "[his] officers do not target inmates." Id. at ¶50. The plaintiff avers that he "truly believed that Sabish would order [him] to be placed in the segregation unit if [he] reported Briggs['s] conduct to be retaliatory in [his] inmate complaint." Id. at ¶51. He avers that "to prevent Sabish from placing [him] in the segregation unit for speaking out about Briggs['s] retaliatory conduct, [he] crafted two separate inmate complaints to characterize her egregious behavior." Id. at ¶52.

The defendant contends that the court cannot credit the plaintiff's claim of unavailability because the plaintiff did not challenge a conduct report in which Sabish charged the plaintiff with lying about staff for alleging in his inmate complaint that Briggs walked into him. Dkt. No. 90 at 1-2. The defendant cites Lindell v. Frank, Case No. 05-C-3, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005) in support of this assertion. In that case, an incarcerated individual alleged that he had received "three false conduct reports as part of a conspiracy to retaliate against him for expressing his religious and philosophical views." Id. The district court said that "[t]o exhaust his administrative remedies with respect to his retaliation claim, plaintiff must have made it clear to the disciplinary hearing officer and the warden that he believed the conduct reports had been written in an effort to chill his First Amendment rights." Id. In this case, the plaintiff alleges that Briggs *withheld his medication* in retaliation for the plaintiff complaining about Briggs bumping

12

into him in the hallway and not, as in <u>Lindell</u>, that Briggs issued him a conduct report. (As it turns out, *Sabish* issued the plaintiff a conduct report based on the plaintiff's inmate complaint against Briggs, but the plaintiff is not proceeding on a claim against Sabish.) <u>Lindell</u> is distinguishable, and it does not establish that the court cannot credit the plaintiff's claim of unavailability.

The defendant does not refute the plaintiff's assertion that Sabish threatened him with a long stay in segregation if he filed an inmate complaint alleging that Briggs retaliated against him. Nor does the defendant refute that the threat of a long stay in segregation would deter a person of ordinary firmness from filing a grievance. <u>Cf.</u> <u>Whitfield v. Spiller</u>, 76 F.4th 698, 707 (7th Cir. 2023) (six days of disciplinary segregation qualify as serious enough to deter the exercise of First Amendment rights to support retaliation claim). The defendant has failed to meet his burden to show that remedies were available to the plaintiff. <u>See</u> <u>Gooch v. Young</u>, 24 F.4th 624, 628 (7th Cir. 2022) (remedies are not "available" to incarcerated individual who is prevented by threats or intimidation by prison officials from submitting a grievance according to the prescribed policies) (citing <u>Ross v. Blake</u>, 578 U.S. 632, 644 (2016)). The court will deny the defendant's motion for partial summary judgment on exhaustion grounds. The court will set new deadline for the parties to complete discovery and file motions for summary judgment on the merits of the plaintiff's claims.

## II.   Plaintiff's Motion for Sanctions (Dkt. No. 61)

The plaintiff contends that the court should sanction the defendant $50,000 for prison officials' willful destruction of video footage relevant to his claims. Dkt. No. 61 at 5. The plaintiff asserts that on May 24, 2023—three days after Briggs initially withheld his medication—he wrote to ICE Carrie Spranger to preserve video footage of the incidents that occurred on May 21, 2023. Id. at 1-2. In his request, the plaintiff said that one incident occurred from about 10:50 a.m. to 10:57 a.m., between the area in front of the officers' station and the social workers' office, and the second incident took place from 6:15 p.m. to 9:00 p.m., in the area between the front of the officers' station and the staff bathroom. Id. at 2. The plaintiff states that on May 25, 2023, Spranger advised him to contact Sabish regarding his request and that same day, the plaintiff talked to Sabish about preserving the video footage for litigation. Id. The plaintiff says that he did not receive a response from Sabish. Id. The plaintiff states that on June 1, 2023, he filed two inmate complaints that referenced his previous video preservation requests. Id. He asserts that on June 6, 2023, Spranger emailed Sabish and Kettle Moraine's health services manager and referenced the plaintiff's request to preserve the video footage. Id. The plaintiff states that the defendant's January 27, 2026 response to his request for production of documents states that no video was retained of the requested incidents. Id. at 3.

The defendant responds that sanctions are not warranted because Briggs did not have any personal involvement in video preservation at Kettle Moraine

14

and did not have the ability to save or destroy video footage. Dkt. No. 73 at 1. The defendant also asserts that there is no evidence of bad faith in prison officials' failure to save video footage, and that the lack of video footage does not prejudice the plaintiff. Id. at 1-2.

The defendant reiterates the plaintiff's description of his request to preserve video to ICE Carrie Spranger. Id. at 4. The defendant asserts that because Spranger did not have access to review or download videos, she forwarded the plaintiff's request to the litigation coordinator and the security director's program assistant and asked them who she should contact regarding the plaintiff's request. Id. Spranger copied Sabish on the email, stating: "Cc: CPS Sabish—regarding events that occurred on Unit 9 for your awareness; I directed him to contact you regarding the matters first!" Id. The defendant states that the litigation coordinator forwarded Spranger's email to Captain Thomas Campbell, asking him to advise on the process. Id. Spranger did not receive a response from Campbell, but she believed that her involvement was concluded. Id. Campbell does not remember if he responded to the email, but he believes he would have assumed that Sabish was handling the alleged incidents. Id. As unit manager, Sabish could only access and review footage in Kettle Moraine's security camera system directly. Id. Sabish did not know how to save videos and if he needed to have a video saved, he would submit a request to a security supervisor. Id. Any unsaved security camera footage would have been overwritten automatically in the security camera system after 120 days. Id.

In the plaintiff's complaint KMCI-2023-8304, in which he alleged that Briggs had withheld his sinus medication, the plaintiff said that he had requested video footage be preserved and talked to Sabish. Id. at 6. Sabish does not recall if this occurred, nor does Sabish recall if he ever requested a security supervisor to save the security camera footage from May 21 and 22, 2023, the alleged incident dates. Id. at 6-7. The defendant states that videos generated from the security camera footage system do not have audio and therefore would not have documented any conversation that took place, and it would have been very difficult to see what was happening inside the officers' station from the cameras. Id. Sabish also does not remember the plaintiff talking to him about his video preservation request referenced in complaint KMCI-2023-8305 in which the plaintiff alleged that Briggs intentionally walked into him. Id.

On June 19, 2023, Sabish authored Conduct Report 328251, which charged the plaintiff with lying about an employee and disruptive conduct related to his claim that Briggs had intentionally walked into him. Id. at 8. Sabish made the decision to issue a conduct report after viewing security camera footage that did not support the plaintiff's allegation that Briggs had intentionally walked into him. Id. at 13. The plaintiff accepted the conduct report uncontested and agreed to a disposition of sixty days in segregation. Id. at 8. Because the plaintiff did not contest the disposition of the conduct report, Sabish assumed a security supervisor would have saved the video footage if needed, and he did not specifically request that a security supervisor do so. Id. at 8-9.

The plaintiff replies that the defendant's explanations do not overcome prison officials' blatant disregard of his request to safeguard the institutional video footage of the two events. Dkt. No. 84 at 2. He asserts that the requested video intentionally was not preserved to conceal Briggs's withholding of the plaintiff's medication. Id. at 2-5. He also states that whether prison officials overtly or "covertly" overlooked the fact that unsaved security camera footage would be automatically overwritten after 120 days, their failure to preserve the footage was in bad faith because they knew the plaintiff was going to file a lawsuit. Id. at 5.

Federal Rule of Civil Procedure 37(e)(2)(A) provides:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may . . . presume that the lost information was unfavorable to the party.

The "destruction of or inability to produce [evidence], standing alone, does not warrant an inference that the [evidence], if produced, would have contained information adverse to the [defendant's] case." Trover v. Oglesby, Case No. 24-1733, 2026 WL 457254, at **4-5 (7th Cir. Feb. 18, 2026) (quoting Park v. City of Chicago, 297 F.3d 606, 615 (7th Cir. 2002)). "The crucial element is not that the evidence was destroyed but rather the reason for the destruction." Id. (quoting S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co., 695 F.2d 253, 258 (7th Cir. 1982)). As the moving party, the plaintiff bears the burden of establishing that a defendant acted in bad faith, which requires destruction

17

"for the purpose of hiding adverse information." Id. (quoting Bracey v. Grondin, 712 F.3d 1012, 1019 (7th Cir. 2013) (internal quotation marks omitted)).

The plaintiff has not submitted evidence that Briggs had any involvement in the failure to preserve video footage. Even if Briggs knew about the plaintiff's video preservation requests, she lacked the authority to preserve video at Kettle Moraine. The plaintiff is not entitled to sanctions because Briggs was not involved in preserving the surveillance video at issue. See Bentz v. Lindenberg, 854 F. App'x 55, 56 (7th Cir. 2021) (no adverse-instruction warranted because plaintiff provided no proof that defendants were personally involved in alleged destruction of video) (citing Bracey, 712 F.3d at 1018-19 (affirming decision to decline an adverse-instruction request because plaintiff lacked evidence that defendants had destroyed video)). The plaintiff also has not submitted evidence that prison officials acted in bad faith by not preserving the video. As described in detail in the parties' submissions, the plaintiff requested that surveillance video be preserved, but there appears to have been a mistake or miscommunication about who would preserve it. Because the plaintiff is not entitled to sanctions, the court will deny his motion.

## III.   Conclusion

The court **DENIES** the defendant's motion for partial summary judgment on exhaustion grounds. Dkt. No. 52.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 61.

The court **ORDERS** that the deadline for the parties to complete discovery is **October 16, 2026** and the deadline for the parties to file motions

for summary judgment on the merits of the plaintiff's remaining claims is

**November 20, 2026**.

Dated in Milwaukee, Wisconsin this 16th day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**